■ Blanche Miller, Respondent, v. State of New York, Appellant. (Claim No. 32851.) Blanche Miller, as Administratrix of the Estate of John Miller, Deceased, Respondent, v. State of New York, Appellant. (Claim No. 32852.) — The State appeals from judgments in the above-entitled actions in favor of the claimants. One judgment was for Blanche Miller, individually, in the amount of $1,252.64 for her personal injuries, and the other was awarded her as administratrix of the goods, chattels and credit of her deceased husband, John Miller, for conscious pain and suffering and wrongful death. The award for conscious pain and suffering was $6,214.55 and for the wrongful death $37,500 plus interest, totaling $48,231.84. The accident out of which these claims arose occurred on Route 32, the main highway connecting the City of Mechanicville on the north and the Village of Waterford on the south. It happened on August 2, 1954 at about 12:15 A.M. in the town of Halfmoon, Saratoga County. The claims alleged negligence on the part of the State in the construction and maintenance of said highway. Route 32 was originally an 18-foot concrete two-lane highway. Prior to 1954 it was widened to 22 feet by placing 2 feet of macadam highway on each side of the concrete pavement. In 1954 the State resurfaced the highway with blacktop for a distance of about 2½ miles from the northerly village line of the Village of Waterford north toward the City of Mechanicville. As a part of the resurfacing project, the State constructed a number of macadam ramps to connect with private driveways on the easterly side of the highway. One of these ramps led into the Miller apartments (no relation to claimants) and was the site of the accident. In addition to the resurfacing, a macadam shoulder about 3-feet wide was added to the easterly side of the highway. This shoulder commenced some distance south of the Miller driveway and continued north of same. The easterly edge of the macadam shoulder was some six inches above the dirt shoulder for a distance of 20 feet southerly from the Miller ramp. The ramp itself, rising from the dirt shoulder to the level of the macadam, also provided a perpendicular drop of six inches. At the time of the accident the road was under construction and the State had placed warning signs at each end of the project. The road construction sign at the southerly end was placed about 200 feet south of the southerly end of the project. The sign was about 8 feet wide and 4 feet high and contained the legend " Danger — Road Construction New York State Department of Public Works, Traffic Maintained". During the night two "bomb type" flares were lighted and placed in front of the sign. This sign was nailed to a tree which was alive and in bloom at the time of the accident. It was about one-half mile from this sign to the site of the accident and there were no other warning signs along the highway. Apparently, to a wayfarer, the road was completed, and the record seems to indicate that it was, except for the immediate area around the Miller driveway. The State's witnesses testified that to complete the project all that was done following the accident on August 8, 1954 was to build up the shoulder on the easterly side of the highway at the Miller driveway so as to make it level with the macadam pavement. As one goes north approaching the Miller driveway there is a gradual curve to the west which commences about 100 feet south of the Miller driveway and continues about 100 feet to the north. With this setting, we find Mr. and Mrs.

Miller proceeding northerly on the right side of the highway on a motorcycle which was owned and operated by John Miller, the deceased. His wife Blanche was riding on the rear set. Another couple, friends, Mr. and Mrs. Edward Snay, were proceeding northerly on a motorcycle behind them. Mrs. Miller testified that just before the accident she observed the headlights of traffic coming in a southerly direction, and that her husband then moved the motorcycle gradually to the right and the next instant the front wheel of the motorcycle dropped and hit something bluntly and the rear wheel went up and they were thrown to the ground. Mrs. Miller testified that she saw no signs on the highway, and no flares or highway lights. Assuming that the signs and " bomb type " flares *were* present as claimed by the State, we feel that insufficient warning was given of this dangerous condition (*Canepa* v. *State of New York,* 306 N. Y. 272; *Ziehm* v. *State of New York,* 270 App. Div. 876; *Le Boeuf* v. *State of New York,* 169 Misc. 372, affd., 256 App. Div. 798, affd, 281 N. Y. 737; *McDevitt* v. *State of New York,* 1 N Y 2d 540) and the finding that the State was negligent in the construction and maintenance of this repair project is amply sustained by the evidence. This drop-off or depression created by the State was a danger and a hazard to traffic. It was created by the State and the uncontradicted testimony shows that it had actual notice thereof. It was particularly dangerous because the highway for some distance southerly therefrom was 25 feet in width with the edges of the macadam on a level with the adjoining shoulder. The easterly shoulder was completed and level with the adjacent macadam throughout its length, with the exception of the area immediately south and immediately north of the Miller driveway. The burden of proving the contributory negligence of the deceased was of course upon the State. There is no showing of any unreasonable speed and we feel that the determination of the absence of contributory negligence by the trier of the facts was justified and on sound ground. The claimant Blanche Miller, as administratrix of the goods, chattels and credits of John Miller, cross-appeals, on the ground of inadequacy, from that part of the judgment which provided the sum of $37,500, plus interest in the amount of $4,504.17, for the wrongful death of claimant's intestate. She contends that it does not reasonably compensate her and the four children for the pecuniary loss they suffered by reason of John Miller's death. He was 35 years of age, of good health, with a life expectancy of 33.44 years and with probable average earnings of $50 per week. His widow was 28 years of age with a life expectancy of 37.74. All the children were under five years af age, one having been born after his death. Evaluation of this death case is a responsibility committed to the court that tries the case. While some courts might have granted more or less, no sufficient grounds appear for a revision of the amount found. Judgment affirmed, with costs to respondents. Bergan, J. P., Gibson, Herlihy and Reynolds, JJ., concur.