■ A TO Z ASSOCIATES, Respondent, v VAMCO, INC., Appellant. (And a Third-Party Action.) [651 NYS2d 761] —Mikoll, J. Appeal from an order and judgment of the Supreme Court (Relihan, Jr., J.), entered December 18, 1995 in Tompkins County, which, *inter alia*, granted plaintiff's motion for summary judgment.

On September 12, 1988 plaintiff purchased a cooperative apartment, unit No. 7-G at Villa Meadows Townhouses, for $63,000 from the seller, Village Meadows Associates (hereinafter VMA). The cooperative apartment complex is located in the City of Ithaca, Tompkins County. VMA was a limited partnership engaged in the sale of the cooperative units. As part of the purchase price, plaintiff gave VMA a note in the principal sum of $28,187. The note was secured by a pledge of 300 shares of Village Meadows, Inc. (the cooperative corporation) stock and the proprietary lease of unit No. 7-G. The proprietary lease and the stock were delivered to plaintiff at the time of closing.

Plaintiff thereafter signed a security agreement and a form UCC-1 which allowed VMA to perfect its security interest in the stock and the proprietary lease. On September 27, 1988 VMA assigned to Columbia Banking Federal Savings & Loan Association the note and security interest as collateral security. As plaintiff's president signed the UCC financing statement, plaintiff had notice of VMA's assignment to Columbia Banking. Columbia Banking also held a second mortgage on the cooperative.

In 1988 Columbia Banking agreed that it would assign VMA a fractional interest in the second mortgage on the cooperative in return for a net portion of the proceeds of the sale of cooperative units sold by VMA. VMA was required to buy out Columbia Banking's participation in the second mortgage interest before May 1, 1990. VMA failed to do so and came under pressure to fulfill its obligations. On February 27, 1992, in an effort

to facilitate the buyout of Columbia Banking's second mortgage, VMA entered into an "accommodation agreement" with VMA Salvage, Inc., which included a note discount program to obtain cash and pay off Columbia Banking's mortgage notes. VMA Salvage was created to loan money to VMA and was given the right to acquire all of VMA's interests in the second mortgages which it shared with Columbia Banking. Note holders were allowed to pay off the face of their notes in cash in exchange for a 25% discount. VMA's general partnership agreement was likewise modified to allow this discount program.

On June 11, 1992 Columbia Banking was placed in receivership. Resolution Trust Corporation was appointed conservator. Defendant asserts that BEI Management, Inc. was appointed as Resolution's servicing agent and that plaintiff made payments on its debt directly to BEI. In September 1993 Bill Zikakis, a partner in plaintiff, stated that VMA general partner Gerald R. Talandis (third-party defendant in this action) contacted him and announced that VMA proposed a discount of the note that plaintiff owed from the purchase of unit No. 7-G. The note would be discounted provided the balance would be paid off in cash. Zikakis claimed that he negotiated a discount of 33 1/3 % with VMA.

On September 24, 1993 Zikakis delivered to VMA a check in the sum of $17,739.75 in full satisfaction of the note owed. Zikakis included in his motion papers a letter signed by Talandis, as VMA general partner, which stated that the $17,739.75 payment was accepted as payment in full satisfaction of the note. The check was endorsed "7G Full payment Note dated 9/12/88" and was accepted. The funds were remitted by Talandis to BEI on October 1, 1993. On August 13, 1994 Resolution assigned its interest in the loan in question to Bank of America National Trust and Savings Association. By October 26, 1994 VMA Salvage successfully raised enough cash to eliminate the interest formerly held by Columbia Banking and now held by Bank of America.

On October 28, 1994, Zikakis received a letter from VMA Salvage claiming that the note which plaintiff paid off on September 24, 1993 was in default. The letter claimed that as of April 30, 1994 the principal balance due on the note was $9,610.39. Plaintiff demanded from defendant a termination statement pursuant to UCC 9-404 seeking to have its security and share certificate returned to it because the note had been fully paid and discharged. Defendant refused to file a termination statement canceling the UCC-1 statement.

Plaintiff subsequently commenced this action pursuant to

UCC 9-404 to require defendant to file a termination statement and for return of the share certificate evidencing ownership of the Village Meadows, Inc. stock. Defendant answered asserting a counterclaim and the defense that Talandis exceeded the powers granted him by the general partnership agreement. Plaintiff moved for summary judgment granting its claim and dismissing defendant's counterclaim. Defendant cross-moved for summary judgment on its counterclaim.

Supreme Court granted plaintiff's motion and denied defendant's cross motion. Defendant was ordered, *inter alia,* to file a termination statement pursuant to UCC 9-404 and to deliver to plaintiff the share certificate relating to the stock. Defendant's counterclaim was dismissed on the merits.

On this appeal defendant contends that Supreme Court erred in granting summary judgment to plaintiff, asserting that at the time plaintiff negotiated the discount with Talandis as a representative of VMA it knew the note was assigned to Bank of America as plaintiff was making payments to Bank of America's servicer. Defendant claims that, consequently, plaintiff could not rely upon Talandis' authority to offer the one-third discount since at the time of negotiation VMA was an assignor, and the discount was not binding on Bank of America. We disagree. The order and judgment of Supreme Court should be affirmed.

Plaintiff's motion papers have established that it is entitled to judgment in its favor as a matter of law as there are no material facts in dispute warranting a trial (*see, Zuckerman v City of New York,* 49 NY2d 557, 562; *see also,* CPLR 3212 [b]). BEI's acceptance of the check, indicating that it was offered in full payment of the note, modified the note and constituted an accord and satisfaction (*see, Gimper, Inc. v Giacchetta,* 221 AD2d 682, 684; *see also, Hemingway v State Farm Fire & Cas. Co.,* 187 AD2d 814, 815-816). Defendant's claim that plaintiff had notice of a new assignee, Bank of America, or that a material issue of fact exists is without merit. Additionally, after BEI accepted the payment it did not request further payment. Also, receipt of the cash advance was a benefit to defendant as it enabled VMA to buy out the secondary mortgage which VMA was obligated to do.

Cardona, P. J., White and Yesawich Jr., JJ., concur. Ordered that the order and judgment is affirmed, with costs.