OPINION OF THE COURT
 

 R.S. Smith, J.
 

 The principal issue presented by this case is whether certain
 
 *322
 
 internal documents prepared by the New York City Department of Environmental Protection (DEP) constituted a “written acknowledgement from the city” within the meaning of the City’s “Pothole Law” (Administrative Code of City of NY § 7-201 [c]). We hold that the documents did constitute such an acknowledgement, and therefore we reverse the Appellate Division order dismissing plaintiffs complaint. We also hold that Supreme Court erred in failing to submit the issue of plaintiffs comparative negligence to the jury.
 

 Facts and Procedural History
 

 On July 10, 1997, someone contacted the Central Complaint Bureau of the Bureau of Sewers, which is a part of DEip about a problem at 11th Avenue and 62nd Street in Brooklyn. According to the complaint ticket generated as a result of the call, the problem was a “c/b sxjnken/damaged/raised affecting street.” “C/B” is an abbreviation for “catch basin,” which is essentially an open box set into the street and covered by a metal grate. Its purpose is to collect water. The maintenance of catch basins is DEP’s responsibility.
 

 Expert testimony at trial explained how a defective catch basin could affect the street. The grate covering a catch basin is held in place by a metal frame, which sits on bricks that make up the upper portion of the catch basin walls. The brick walls are wider than the frame, and therefore the bricks also support a part of the adjacent pavement. If bricks are removed or fall away, the pavement will be unsupported, and any weight placed on it will cause that portion of the street to cave in.
 

 The DEP document reflecting the July 10 complaint was forwarded to Samuel Gomez, a Bureau of Sewers supervisor, who inspected the catch basin and adjacent area on July 18, 1997. Gomez filled out a “Foreman’s Report” in which he stated: “Repair defective C/B unit ... is missing bricks on the wall stock due to caving. Loe. safe at this time.” Gomez testified that “caving” meant “a hole in the street.”
 
 [1]
 
 He also testified that “Loe. safe at this time” meant that he had set up a sawhorse and traffic cones around the hole. Gomez’s report included a sketch, showing that the problem area was located in the street next to the sidewalk.
 

 
 *323
 
 Gomez testified that it was his practice to refer some complaints about defects in the roadway to the New York City Department of Transportation (DOT), which is generally responsible for street repairs. In this case, however, since the catch basin was defective, Gomez determined that DEP, not DOT, would be responsible for the repair. He also determined that the problem required a major repair—beyond the sort of routine maintenance that he personally might handle—and he therefore filled out another form, a “Request for Repairs Work Order,” also dated July 18, 1997. The request was approved on July 23, 1997, but DEP did not do the work until September 16. DOT did not need to be, and was not, involved at any stage in identifying or remedying the problem.
 

 Plaintiff lived at 11th Avenue and 67th Street, five blocks from the catch basin. On August 26, 1997—39 days after Gomez inspected the site and prepared his report and work order, and 21 days before the hole was repaired—plaintiff left his apartment before sunrise and walked to a grocery store on 61st Street between 12th and 13th Avenues. As was his custom, he took a slightly indirect route to the store, in order to pass by a church which he found to be “an interesting structure.” At the grocery store, plaintiff discovered that he had left his wallet home and set out to retrieve it. On his homeward journey, he chose to take a different route because it was “a little shorter,” and thus found himself walking on 11th Avenue between 61st and 62nd Streets, an area where he had never walked in the dark before.
 

 The lighting was poor, and plaintiff therefore walked in the middle of 11th Avenue, where there was some illumination from a nearby train station. At 11th Avenue and 62nd Street the lighting got better, and plaintiff decided to go up on the sidewalk. As he crossed toward the corner of 11th Avenue and 62nd Street he was “looking straight ahead” and, as a result, did not see the hole adjacent to the catch basin until he stepped in it. The sawhorse and traffic cones that Gomez said he put around the hole on July 18 were not present.
 

 Plaintiff suffered a broken jaw and other injuries, and sued the City for negligence. Supreme Court denied the City’s motion for a directed verdict based upon the Pothole Law, and also denied the City’s request for a jury charge on comparative negligence. The jury returned a verdict for plaintiff in the amount of $1.6 million.
 

 Supreme Court entered judgment in accordance with the verdict, but the Appellate Division reversed and dismissed the
 
 *324
 
 complaint, holding that “the intra-departmental work order submitted by a supervisor with the NYCDEP . . . does not constitute a ‘written acknowledgement from the city’ of the defective condition within the meaning of the Pothole Law . . . (302 AD2d 545, 546 [2003].) We granted leave to appeal and now reverse.
 

 Discussion
 

 A. The Pothole Law
 

 The Pothole Law provides in relevant part:
 

 “2. No civil action shall be maintained against the city for damage to property or injury to person or death sustained in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing including any encumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the defective, unsafe, dangerous or obstructed condition, was actually given to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice, or where there was previous injury to person or property as a result of the existence of the defective, unsafe, dangerous or obstructed condition, and written notice thereof was given to a city agency, or there was written acknowledgement from the city of the defective, unsafe, dangerous or obstructed condition, and there was a failure or neglect within fifteen days after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or the place otherwise made reasonably safe. . . .
 

 “4. Written acknowledgement shall be given by the department of transportation of all notices received by it.” (Administrative Code § 7-201 [c].)
 

 Thus paragraph (2) of the law lists three alternative prerequisites to an action: (1) “written notice . . . actually given to the commissioner of transportation” or his designee; (2) “previous injury to person or property . . . and written notice . . . given to a city agency”; or (3) “written acknowledgement from the city of the defective, unsafe, dangerous or obstructed condition.” Plaintiff here relies on the third alternative, contending that the DEP documents described above constituted “written
 
 *325
 
 acknowledgement from the city.” The City argues that the documents cannot be such an acknowledgement because they “do not evince an awareness by the City of a hole in the street”; because they originate with DEI] not DOT;
 
 [2]
 
 and because they are internal documents.
 

 We reject all three of the City’s arguments and hold that a written statement showing that the city agency responsible for repairing a condition had first-hand knowledge both of the existence and the dangerous nature of the condition is an “acknowledgement” sufficient to satisfy the Pothole Law.
 

 The City’s first argument, that the DEP’s documents do not show that the City knew there was a hole in the street, is frivolous. The report prepared by Gomez based on his personal observation specifically refers to “caving,” which Gomez testified meant “a hole in the street.” Gomez’s work order called for the use of “Cold Patch”—a reference, according to expert testimony, to “coal patch,” which is commonly used to replace asphalt. The sketch in Gomez’s report shows that the problem area was in the street. The report also states: “Loc[ation] safe at this time”—which meant, according to Gomez’s testimony, that he had protected the area with a sawhorse and traffic cones. Thus the documents show beyond any question that the City was aware both that there was a hole in the street and that it was dangerous.
 

 The issue of whether the “acknowledgement” referred to in paragraph (2) of the Pothole Law must be from DOT was raised, but not decided, in our only previous case dealing with the “acknowledgement” provision of paragraph (2),
 
 Laing v City of New York
 
 (71 NY2d 912 [1988]). That case concerned a crack in the sidewalk. The plaintiff in
 
 Laing
 
 claimed that a tree inspection report of the Department of Parks and Recreation, on which the word “Cracked” appeared on the line for “Sidewalk Conditions,” was an “acknowledgement from the city” within the meaning of the Pothole Law.
 
 (Id.
 
 at 914.) We rejected the claim on the ground that “[t]he tree inspection report . . . was completed by the Parks Department in connection with tree-pruning, not in connection with any sidewalk condition.”
 
 (Id.)
 
 We added: “We thus do not reach the question whether a ‘writ
 
 *326
 
 ten acknowledgement from the city’ under the Pothole Law must come only from the Department of Transportation . . .
 
 {Id.)
 

 This case is the opposite of
 
 Laing
 
 in a key respect: The documents involved in this case were prepared in connection with the hole in the street of which plaintiff complains. DEf^ which prepared the documents, was responsible for fixing the hole— and it did fix it, after plaintiffs accident, without giving notice to DOT or involving DOT in any way. Thus this case presents the question not reached in
 
 Laing-.
 
 whether the “written acknowledgement” contemplated by paragraph (2) can ever come from an agency other than DOT. We hold that it can where, as here, that other agency is performing the function (normally performed by DOT) of remedying an unsafe condition in the roadway.
 

 The language of paragraph (2) does not support the theory that “written acknowledgement from the city” means “written acknowledgement from DOT” in all cases. The first of the three alternatives listed in paragraph (2) of the Pothole Law expressly requires written notice “to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice.” The third alternative could have used parallel language—“acknowledgement from the commissioner of transportation or any person or department authorized by the commissioner to give such acknowledgement”—but it refers to “acknowledgement from the city” instead. The language thus implies that the category of entities which can give an acknowledgement is larger than the category which can receive notice.
 

 Nor would it serve the purpose of the “written acknowledgement” requirement to hold that acknowledgements can come only from DOT. Clearly, the Pothole Law was designed with DOT in mind. The City concedes, however, that in certain cases—such as this pavement cave-in—DOT is not responsible for the repair. We cannot conclude that the City Council intended to shield the City from liability in all such cases. While the purpose of the acknowledgement provision is not explained in the legislative history, we interpret it as permitting a lawsuit where there is documentary evidence showing, as clearly as written notice to DOT would show, that the City knew of the hazard and had an opportunity to remedy it. That purpose is fulfilled by a written acknowledgement from the responsible agency showing that it had knowledge of the condition and the
 
 *327
 
 danger it presented. The purpose is no less served in the exceptional case where the responsible agency is one other than DOT.
 

 Nor do we accept the City’s argument that an internal document cannot constitute an “acknowledgement.” The City bases this argument on definitions it finds in law dictionaries and in
 
 Willis v Mott
 
 (36 NY 486, 491 [1867]), which suggest that “acknowledgement” is a synonym for admission, confirmation, concession, recognition or avowal.
 
 Willis v Mott
 
 says that one meaning of “acknowledge” is “to declare openly.”
 
 (Id.)
 
 But these are not the only possible definitions of “acknowledgement”; one of the definitions of “acknowledge” in Merriam-Webster’s Collegiate Dictionary (10th ed 1993) is simply “to take notice of.” And in any event, the definitions the City relies on do not necessarily imply that internal documents cannot be acknowledgements. There is no reason why employees of a city agency may not admit, confirm, concede, recognize or avow something to other employees of the same agency. One of the definitions of “acknowledge” quoted by the City—“to recognize one’s acts, and assume the responsibility therefor” (Black’s Law Dictionary 21 [5th ed 1979])—is a reasonable description of what the DEP documents at issue in this case do.
 

 We find the purpose of the law more helpful than dictionaries in deciding the meaning to be given “acknowledgement” in this context. As we said above, the “acknowledgement” alternative in paragraph (2) of the Pothole Law appears to be designed to make written notice to DOT unnecessary where there is documentary evidence that serves the same function—to demonstrate that the responsible city agency knew of the hazard and had an opportunity to remedy it. This purpose can be served as well by an internal document as an external one.
 

 In short, we hold that the documents relied on by plaintiff satisfy the “acknowledgement” requirement of paragraph (2) of the Pothole Law. The Appellate Division’s dismissal of the complaint, which was based on a contrary holding, should therefore be reversed.
 

 B. Comparative Negligence
 

 The City argued in the Appellate Division both that the case should be dismissed under the Pothole Law and that, if it were not dismissed, a new trial should be ordered because of Supreme Court’s failure to charge comparative negligence. The Appellate Division accepted the first of these arguments and did
 
 *328
 
 not have to reach the second.
 
 [3]
 
 Since we reverse on the first issue, we do reach the second, and find that we agree with the City’s contention.
 

 The issue of negligence, whether of the plaintiff or defendant, is usually a question of fact. It should be submitted to the jury if there is a valid line of reasoning and permissible inferences from which rational people can draw a conclusion of negligence on the basis of the evidence presented at trial.
 
 (Nallan v Helmsley-Spear, Inc.,
 
 50 NY2d 507, 517 [1980].) Here, there are at least two ways in which a reasonable jury could infer from the evidence that plaintiff failed to exercise due care. First, a jury could conclude that a reasonable person in plaintiffs position would not have chosen to walk in darkness a route he had never walked at night before, when a more familiar, only slightly longer, route was available. Secondly, a jury could conclude that plaintiff, walking in an unfamiliar, ill-lighted area, should not have been looking “straight ahead” but should have been attentive to the ground in front of his feet. We do not suggest that those are the only possible grounds on which a jury might find that plaintiff failed to exercise due care; nor do we suggest that the facts compel a finding of negligence by plaintiff. We do hold, however, that the jury should have been asked whether plaintiff was negligent, and if so to what extent his negligence contributed to causing the accident.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial ordered.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and Read concur.
 

 Order reversed, etc.
 

 [1]
 

 . Gomez’s report seems to indicate that the hole in the street caused the catch basin wall to be missing bricks. However, an engineer called by plaintiff testified without contradiction that the normal course of events would be the other way around—the loss of bricks would cause the street to cave in.
 

 [2]
 

 . The City says it is unnecessary to reach the question of whether an “acknowledgement” sufficient to satisfy the Pothole Law can come only from DOT, though it implies that the answer to the question is yes. The City does argue that DEP work orders, by their nature, cannot qualify as acknowledgements because their function is to initiate sewer repairs, not roadway repairs.
 

 [3]
 

 . The Appellate Division also did not reach the question of whether the $1.6 million damage award was excessive. That question is moot in light of our decision.