*245 OPINION OF THE COURT
Carolyn E. Demarest, J.
In this action by plaintiff K.C. McDaniel for repayment of certain monies, defendants 162 Columbia Heights Housing Corporation (162 CHHC), Keiko DeLille, and Erika McGrath (collectively, defendants) move for an order: (1) directing plaintiff to terminate the UCC-1 financing statement which she filed against the garden apartment unit owned by 162 CHHC and now owned by nonparty Nicodemo Esposito, and (2) assessing statutory costs and the costs of making this motion against plaintiff.*
162 CHHC is a five-unit residential cooperative corporation. In 1991, Celeste Gudas purchased the garden unit in the building owned by 162 CHHC. A dispute arose when 162 CHHC refused to approve Celeste Gudas’ renovation plans for the garden unit. On January 6, 1995, Celeste Gudas filed an action (Gudas v 162 Columbia Hgts. Hous. Corp., Sup Ct, Kings County, index No. 28888/95) (the Gudas action) against 162 CHHC and Erika McGrath, Richard McGrath, James Craig, Keiko DeLille, and plaintiff (the shareholders of 162 CHHC). The Gudas action was settled in 2004 by 162 CHHC’s payment to Celeste Gudas of $550,000 in return for her relinquishing all of her rights to the garden unit. Plaintiff advanced the $550,000 to 162 CHHC to settle the Gudas action, and she claims to have also advanced $221,000 to pay the attorneys who represented 162 CHHC in the Gudas action. In addition, plaintiff asserts that she expended $30,000 in engineering and architectural fees in connection with the garden unit. Plaintiff claims to have made these payments with the understanding that she would acquire the proprietary lease and shares allocated to the garden unit from 162 CHHC, who, as a result of the settlement, became the owner of these shares.
Plaintiff asserts that in June 2005, Keiko DeLille (a director and shareholder of 162 CHHC) demanded an additional amount of $100,000, the surrender of voting rights in the garden unit, and other concessions from her as a condition for allowing her to renovate the garden unit. Plaintiff states that she refused this demand, and demanded payment for the amounts she advanced to 162 CHHC, but was not paid. Consequently, on *246 September 7, 2005, plaintiff filed this action against 162 CHHC and Keiko DeLille and Erika McGrath (162 CHHC’s directors), seeking repayment of the $550,000 advanced by her to settle the Gudas action, the $221,000 advanced by her to the attorneys who represented 162 CHHC in the Gudas action, and the $30,000 that she allegedly expended for engineering and architectural fees in connection with the garden unit.
Plaintiff claims that, thereafter, in October 2005, she learned that Keiko DeLille had listed the garden unit for sale. Plaintiff asserts that when she saw this listing, she determined that the listing price would not yield sufficient proceeds to repay her the monies advanced by her to 162 CHHC. On October 17, 2005, plaintiff filed a UCC-1 financing statement against 162 CHHC and the garden unit. The UCC-1 financing statement, in which plaintiff claims that she is the “secured party” and that 162 CHHC is the debtor, lists the covered collateral as:
“All right, title and interest of debtor [i.e., 162 CHHC] as lessor and/or seller in and to the use, occupancy and the proprietary leasing of, and any proprietary lease and shares issued or to be issued by debtor appurtenant to the [g] arden (ground floor) [u]nit at 162 Columbia Heights, Brooklyn, New York, and any proceeds of the foregoing.”
In May 2006, 162 CHHC sold the garden unit to Nicodemo Esposito for $850,000. By check dated July 20, 2006, 162 CHHC’s attorney, William H. Roth, Esq., paid $650,000 from the attorney-escrow account for the sale proceeds from the garden unit to French & Rafter, LLP, as the attorneys for plaintiff.
In opposition to defendants’ instant motion, plaintiff explains that the reason that she filed the UCC-1 financing statement was that she knew that the proceeds from the sale of the garden unit would be inadequate for 162 CHHC to repay her the monies owed to her, and that she was concerned that the proceeds would be diverted by Keiko DeLille. Plaintiff claims that she wanted to put any potential third-party buyer on notice of her claims to the proceeds.
Plaintiff asserts that all of the parties included in this case had direct personal knowledge that she had advanced the amounts used to acquire the garden unit, and that she, thus, had a “common-law” interest in the proceeds of any sale, transfer, or encumbrance of the garden unit by 162 CHHC. Plaintiff contends that the UCC-1 financing statement was, *247 therefore, not relevant or necessary to create or give defendants notice of her rights, but that such statement would serve to notify potential third-party buyers of her claim.
Plaintiff argues that she has a “common-law” lien which justifies the filing of the October 17, 2005 UCC-1 financing statement. Citing no authority other than the UCC, plaintiff contends that under the common law and the law of trusts, she was entitled to be repaid out of the proceeds from the sale of the shares allocated to the garden unit which had been purchased by 162 CHHC in settlement with Celeste Gudas with funds advanced by plaintiff. Plaintiff asserts that this interest arose and became perfected when 162 CHHC, Keiko DeLille, and Erika McGrath agreed that she would fund the settlement. Specifically, plaintiff avers that she has a “common-law” purchase-money lien which was perfected as between her and 162 CHHC by the fact that 162 CHHC knowingly accepted her funds to buy back the shares allocated to the garden unit from Celeste Gudas. Plaintiff asserts that this “common-law” lien “does not relate to security agreements [under the UCC] but arises from the acceptance of the collateral or thing of value,” and that “[n]o filed security interest or other filing is required.”
Plaintiff contends that UCC 9-509 and 9-518 permit her, as a “holder of an interest perfected under another law or common or agricultural law,” to file a UCC-1 financing statement on proceeds from the garden unit without the signature of the obligated party (i.e., 162 CHHC) in order to give notice to third parties and “continue the lien in regard to proceeds.” Plaintiff asserts that she, therefore, filed the protective UCC-1 financing statement to assert her prior rights in the proceeds of the garden unit.
Initially, it is noted that plaintiff has no “common-law” lien against the garden unit. As noted above, 162 CHHC has already repaid $650,000 to plaintiff and the remainder of her claim was never reduced to a docketed judgment, and is unliquidated and disputed by defendants. Moreover, plaintiff wholly misconstrues the law permitting the filing of UCC-1 financing statements under UCC article 9. Nothing in UCC article 9 permits the filing of a UCC-1 financing statement to protect the existence of such an alleged “common-law” lien.
Plaintiff is not a “secured party” (see UCC 9-102 [a] [72]). Plaintiff is not a “person in whose favor a security interest is created or provided for under a security agreement” (UCC 9-102 [a] [72] [A]), nor does she otherwise meet the definition of a *248 “secured party” under UCC 9-102 (a) (72). Plaintiff merely has an inchoate contested unliquidated claim against defendants.
UCC 9-509, which sets forth the rules determining whether a UCC-1 financing statement may be filed, provides, in subdivision (a) (1), that a person may file an initial financing statement only if “the debtor authorizes the filing in an authenticated record or pursuant to subsection (b) or (c).” Thus, while the debtor’s signature on the financing statement itself is not required, the debtor must authorize the filing of the financing statement in an authenticated record (see UCC 9-509 [a] [1]). There must be some written evidence of the debtor’s intent to grant the security interest (see Micalden Invs. S.A. v Rostropovich, 535 F Supp 2d 433, 435 [SD NY 2008]; King v Tuxedo Enters., Inc., 975 F Supp 448, 452-453 [ED NY 1997]). Here, plaintiff does not dispute that there is no authenticated record in which 162 CHHC authorized the filing of the UCC-1 financing statement. Therefore, UCC 9-509 (a) (1) does not permit plaintiffs filing of the UCC-1 financing statement.
UCC 9-509 (a) (2) permits a person to file an initial financing statement if “the person holds an agricultural lien that has become effective at the time of filing and the financing statement covers only collateral in which the person holds an agricultural lien” (UCC 9-509 [a] [2]). Thus, since plaintiff does not hold an agricultural lien, this section is entirely irrelevant to plaintiffs filing of the UCC-1 financing statement.
Subdivision (b) of UCC 9-509 is also inapplicable to permit plaintiffs filing of the UCC-1 financing statement. Subdivision (b) of UCC 9-509 provides that the debtor authorizes the filing of an initial financing statement “[b]y authenticating or becoming bound as debtor by a security agreement.” Thus, under subdivision (b), a valid enforceable security agreement is required as a predicate to the filing of a financing statement (see UCC 9-203 [b] [3]; Lashua v LaDuke, 272 AD2d 750, 751 [2000]; McMillan v Park Towers Owners Corp., 225 AD2d 742, 743 [1996]; Fundex Capital Corp. v Reichard, 172 AD2d 420, 421 [1991]; Gordian v Donovan, 6 Misc 3d 1028[A], 2004 NY Slip Op 51832[U], *2 [2004]). A “ ‘[s]ecurity agreement’ means an agreement that creates or provides for a security interest” (UCC 9-102 [a] [73]). Here, it is undisputed that no security agreement was ever entered into between plaintiff and 162 CHHC.
Plaintiff, relying upon subdivision (c) of UCC 9-509 and UCC 9-315 (a) (1), states that UCC article 9 allows a creditor with a *249 perfected “common-law” lien to file a financing statement as a “protective” file to give notice to third parties of an interest in proceeds. Plaintiffs reliance upon these sections is misplaced.
Subdivision (c) of UCC 9-509 provides only that “[b]y acquiring collateral in which a security interest or agricultural lien continues under [UCC] 9-315 (a) (1), a debtor authorizes the filing of an initial financing statement.” UCC 9-315 (a) (1) contains the general rule that a security interest survives the disposition of the collateral. Specifically, it provides that a security interest “continues in collateral notwithstanding [the] sale . . . thereof unless the secured party authorized the disposition free of the security interest.” In this case, since plaintiff does not possess a security interest or an agricultural lien, the fact that a security interest or agricultural lien continues in proceeds upon the disposition of collateral pursuant to UCC 9-315 is of no moment. Thus, inasmuch as plaintiff did not acquire collateral in which an existing security interest was in place and continued, UCC 9-509 (c) and 9-315 (a) (1) are wholly inapplicable to and do not authorize the UCC-1 financing statement filed by her.
Therefore, UCC 9-509 did not authorize or permit plaintiff to file a UCC-1 financing statement. A filed financing statement is ineffective to perfect a security interest if the filing is not authorized (see UCC 9-510 [a]).
Plaintiff, in her opposing papers, also cites to UCC 9-518. UCC 9-518 does not support plaintiffs position. Rather, UCC 9-518 affords a nonjudicial means for a debtor to correct a financing statement which was inaccurate or wrongfully filed. However, “[t]he filing of a correction statement does not affect the effectiveness of an initial financing statement” (UCC 9-518 [c]). Therefore, this section only underscores the fact that 162 CHHC has no nonjudicial remedy under the statute to cure plaintiffs unlawful filing because a correction statement would not void the UCC-1 financing statement improperly filed by plaintiff. Thus, UCC 9-518 only supports defendants’ instant motion and 162 CHHC’s need for relief from this court.
Since there is no justification for plaintiffs filing of the UCC-1 financing statement against 162 CHHC plaintiff must be directed to immediately terminate it by filing a termination statement in the Office of the Secretary of State (see UCC 9-102 [a] [79]; 9-501 [a] [2]; 9-513 [c] [4]; A to Z Assoc. v Vamco, Inc., 235 AD2d 705, 707 [1997]).
Defendants, in their motion, also request that damages be awarded to them pursuant to UCC 9-625. Defendants point out *250 that plaintiffs UCC-1 financing statement hinders 162 CHHC’s ability to obtain financing which would be secured by a mortgage because plaintiffs UCC-1 financing statement connotes a senior lien. Defendants also note that Nicodemo Esposito (who, as noted above, is the present owner of the garden unit) may encounter problems if he seeks additional financing due to the filing of plaintiffs financing statement.
UCC 9-625 (b) provides that “a person is liable for damages in the amount of any loss caused by a failure to comply with . . . article [9].” UCC 9-625 (e) (3) provides that “[i]n addition to any damages recoverable under subsection (b),” a person named as a debtor in a financing statement may recover statutory damages of $500 in each case from a person that “files a record that the person is not entitled to file under Section 9-509 (a) .” The remedy, pursuant to UCC 9-625 (e) (3), is statutory and provides for the recovery of $500 where, as here, it has been shown that the person was not entitled to file a UCC-1 financing statement under UCC 9-509 (a). 162 CHHC is, therefore, entitled to recover statutory damages of $500 (see UCC 9-625 [e] [3]; United States v Orrego, 2004 WL 1447954, *3-4, 2004 US Dist LEXIS 12252, *10-12 [ED NY 2004]). Movant has not demonstrated that any actual loss has been sustained to warrant additional damages pursuant to UCC 9-625 (b) .
Accordingly, defendants’ motion, insofar as it seeks an order directing plaintiff to terminate the UCC-1 financing statement filed against the garden unit owned by 162 CHHC and to pay statutory damages of $500, is granted. Plaintiff is directed to terminate the UCC-1 financing statement by filing a termination statement in the Office of the Secretary of State within 20 days after service upon her of a copy of this decision and order, with notice of entry thereof. Payment by plaintiff of the $500 in statutory damages shall be stayed pending the entry of a judgment in this action and, in the event any judgment is rendered in plaintiffs favor, this sum may be offset against that judgment. Defendants’ motion, insofar as it seeks recovery of the costs of making this motion, is denied as such relief is not warranted herein.

 Defendants’ motion, insofar as it also sought an order, pursuant to CPLR 3025 (b), permitting defendants to serve a supplemental amended answer, was already granted by the court at oral argument.