■ PETER HATTEM, Respondent, v ROBERT J. SMITH et al., Appellants. [977 NYS2d 411]—

Garry, J. Appeals (1) from an order of the Supreme Court (Dowd, J.), entered May 16, 2012 in Otsego County, which, among other things, denied defendants' cross motion to set aside a verdict, and (2) from a judgment of said court, entered May 16, 2012 in Otsego County, upon a verdict rendered in favor of plaintiff.

In 2003, plaintiff retained defendant Robert J. Smith, an attorney with defendant Coughlin & Gerhart, LLP, to represent him in the sale of his business, JMF Associates, Inc., to O'Connor and Shew Construction, Inc. (hereinafter OSC). The sale documents included a stock purchase agreement by which the shares in JMF would be conveyed to OSC for a down payment and a balance paid pursuant to a promissory note guaranteed by OSC's two individual owners. The note was backed by a security agreement naming plaintiff as the secured party and JMF as the debtor, and covering all of JMF's assets, including vehicles and construction equipment. In September 2004, Smith sent the proposed sale documents to OSC's attorney; that attorney forwarded the documents to one of OSC's owners and asked that individual to have all parties—including plaintiff—sign the documents and thereafter return them to him. The OSC owners met plaintiff at a branch of NBT Bank, where the documents were fully executed and notarized. Immediately thereafter and without the knowledge of either attorney, OSC obtained a loan from NBT that was secured by the assets of OSC and JMF and consisted of funds sufficient to cover the down payment, bank fees and a line of credit. On

October 5, 2004, NBT perfected its security interest by filing a UCC-1 financing statement (hereinafter a UCC-1). Neither Smith nor OSC's attorney learned about this UCC-1 or the underlying loan from NBT until several years later.

Following these transactions, OSC's owners returned the executed sale documents to OSC's attorney, who sent them to Smith on October 25, 2004. Smith prepared but never filed a UCC-1 securing plaintiff's security interest in the construction equipment, and did not prepare or file Department of Motor Vehicle (hereinafter DMV) liens securing plaintiff's interest in the vehicles (see Vehicle and Traffic Law § 2118). In 2006 and 2007, the Internal Revenue Service filed federal tax liens against JMF, now owned by OSC. OSC's owners stopped making payments upon plaintiff's promissory note and, in 2007, filed for bankruptcy. When plaintiff attempted to repossess the vehicles and equipment pursuant to the security agreement, he discovered that his first-priority security interest had not been protected. Thereafter, NBT sold its security interest to a third party and, in October 2011, by a default order and judgment in a civil action prosecuted by the third party against plaintiff and other defendants, Supreme Court awarded possession of all assets, inventory and other property of JMF and OSC to this third party.

In September 2007, plaintiff commenced this legal malpractice action. Following a trial, the jury was asked whether Smith was negligent in failing to file a UCC-1 prior to NBT's filing, and in failing to file DMV liens. The jury answered both questions in the affirmative and awarded damages to plaintiff. Supreme Court denied defendants' cross motion to set aside the verdict, and judgment was entered thereon. Defendants appeal from the order denying the cross motion and from the judgment..

We agree with defendants' contention that Supreme Court erred in refusing to charge the jury regarding plaintiff's comparative fault. The culpable conduct of a plaintiff client may be asserted as an affirmative defense in a legal malpractice action in mitigation of damages (see CPLR 1411, 1412; Schaeffer v Lipton, 243 AD2d 969, 971 [1997]; Caiati v Kimel Funding Corp., 154 AD2d 639, 639-640 [1989]; see also Shapiro v Butler, 273 AD2d 657, 658 [2000]). Here, the evidence was sufficient to support a finding that plaintiff could reasonably have been expected to understand the underlying obligations and formalities (compare Cicorelli v Capobianco, 90 AD2d 524, 524 [1982], affd 59 NY2d 626 [1983]). Plaintiff was experienced in commercial transactions, including secured loans, understood that

loans such as the one from NBT to OSC generally require collateral, and testified that his purpose in retaining Smith was to protect his security interest in the vehicles and equipment. He acknowledged that none of the discussions among the parties and their counsel leading up to the execution of the sale documents had included any mention of outside loans to OSC, and that he introduced OSC's owners to the NBT officer who later approved the loan.

Plaintiff's testimony as to his purpose in making this introduction and his personal knowledge regarding the owners' intention to obtain financing for the purchase of JMF was contradictory and inconsistent. The loan officer testified that plaintiff introduced OSC's owners to him for this specific purpose, and one of the owners testified that their plan to obtain a loan was discussed with plaintiff before the sale documents were signed; both the owner and the loan officer testified that plaintiff was present during transactions pertaining to the loan. Plaintiff never advised Smith that he had signed the sale documents, nor did he contact Smith after engaging in these transactions. As this evidence provided "a valid line of reasoning and permissible inferences from which rational people can draw a conclusion of negligence," the question of plaintiff's comparative fault should have been submitted to the jury (*Bruni v City of New York*, 2 NY3d 319, 328 [2004]; *see Gotoy v City of New York*, 94 NY2d 812, 814 [1999]; *Klingle v Versatile Corp.*, 199 AD2d 881, 882 [1993]). Accordingly, the matter must be remitted for a new trial.

In light of this determination, we need only briefly address defendants' remaining assertions relative to Supreme Court's denial of the cross motion to set aside the verdict. Defendants assert that it was impossible for Smith to file a UCC-1 before the date of NBT's filing, as he neither possessed the executed security agreement nor knew that it had been executed until several weeks thereafter (*see* UCC 9-509 [b] [1]; *see generally McDaniel v 162 Columbia Hgts. Hous. Corp.*, 21 Misc 3d 244 [2008]). However, upon defendants' cross motion, Supreme Court analyzed the issue more broadly, and denied the cross motion upon the ground that the evidence established that the transaction could have been structured differently. This finding based upon the evidence was properly within Supreme Court's power (*see* CPLR 4111 [b]; Siegel, NY Prac § 399 at 696 [5th ed 2011]). Plaintiff's expert testified that plaintiff's security interest could have been protected by instructions to OSC's attorney precluding release of the sale documents, which Smith did not provide. Thus, it cannot be said that there was "simply no valid

line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *accord Popolizio v County of Schenectady*, 62 AD3d 1181, 1183 [2009]). In light of this very high standard, we further find that the evidence sufficiently established that Smith's failure to file DMV liens was the proximate cause of loss to plaintiff. Accordingly, the court did not err in denying the cross motion to set aside the verdict insofar as it addressed liability. Defendants' remaining claims need not be addressed, as they pertain to the sufficiency of proof of the quantum of damages and are thus encompassed within the issues that will necessarily be presented upon retrial.

Rose, J.P., Lahtinen and Spain, JJ., concur. Ordered that the order and judgment are modified, on the law, by reversing so much thereof as awarded damages; matter remitted to the Supreme Court for a new trial on the issue of damages only, with costs to abide the event; and, as so modified, affirmed.